```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND


AHMAD HALIM                   *
                              *
v.                            *
                              *   Civil Action No. WMN-11-2265
BALTIMORE CITY BOARD OF       *
SCHOOL COMMISSIONERS          *
                              *
    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
```

**MEMORANDUM**

Plaintiff was born in 1950, is a practicing Muslim, and is of Egyptian national origin.  He was employed by Defendant Baltimore City Board of School Commissioners as an untenured math teacher but his contract was not renewed after the 2009-2010 academic year.  Plaintiff alleges that he was harassed during the course of his employment and that the reason Defendant did not renew his contract was his race, color, religion, age, and national origin.  Defendant has filed a motion for summary judgment.  ECF No. 73.  Plaintiff responded with a pleading that he captioned as a "Motion to Overrule Defendant Motion for Summary Judgment and Plaintiff Motion for Summary Judgment."  ECF No. 78.  Plaintiff also filed a Motion to Strike the Deposition Transcripts.  ECF No. 75.  For the reasons that follow, the Court will grant Defendant's motion and deny the motions filed by Plaintiff.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

In its motion, Defendant sets out the following facts, supported by admissible evidence. Plaintiff entered an employment contract with Defendant which was signed on, and made effective as of, September 2, 2008.[1] For the 2008-2009 academic year, he was assigned to Patterson Senior High School as a math teacher. While he did not formally request a religious accommodation, he was permitted to leave the school on Friday afternoons to attend prayer services, even though other teachers were not permitted to leave the school grounds. On Friday, May 8, 2009, Patterson's Principal, Laura D'Anna, prepared a letter informing Plaintiff that he would be reassigned to another

---

[1] Plaintiff had been previously employed by Defendant for the last half of the 2006-2007 academic year. While so employed, Plaintiff was assaulted by a student in March 2007 and alleges that the attack was on account of his Muslim faith. In May of 2007, Defendant informed Plaintiff that his employment contract would not be renewed for the 2007-2008 academic year. Plaintiff filed a charge of discrimination with the EEOC related to this attack and discharge and, after mediating the charge, entered into a settlement agreement under which he received a payment equal to what would have been his full pay for the 2007-2008 academic year had he not been terminated. In the context of a dispute over Plaintiff's entitlement to unemployment benefits for the 2007-2008 academic year, it was determined by an Administrative Law Judge that Plaintiff's settlement award was not back-pay (which would have disqualified Plaintiff for unemployment benefits), but rather, was "more in line with a settlement of a claim for damages." Pl.'s Ex. 9 at 2. Because Plaintiff, by accepting this settlement award, fully waived, settled, and released all claims related to the 2007 incident, the 2007 incident and the settlement do not impact Plaintiff's current claims. Furthermore, while under the terms of the settlement agreement Plaintiff was reinstated as a teacher, it expressly stated that it was "not a guarantee of future continued employment" nor "an automatic grant of tenure." Pl.'s Ex. 8, Confidential Settlement Agreement and Release, ¶ 7.

2

school for the 2009-2010 academic year due to restrictions in her budget. Def.'s Ex. B. The letter informed that the transfer was no reflection on Plaintiff's performance or dedication, but simply a result of the budgetary process.

After preparing the letter, D'Anna attempted to locate Plaintiff to give him the letter, but was unable to do so.[2] She telephoned Plaintiff at 2:25 p.m. and he stated that he was returning to the school but, by 3:45 p.m., he had not done so. See id. (handwritten notation on letter). Plaintiff avers that Principal D'Anna did not pay him for that day. Pl.'s Aff. ¶ 29.

On May 22, 2009, Principal D'Anna sent Plaintiff a certified letter regarding his failure to report to work for the entire week of May 18-22, 2009. Def.'s Ex. C. On June 11, 2009, D'Anna sent Plaintiff another memo stating that when she reviewed the teacher attendance records on Wednesday, June 10, 2009, for the week of June 8 through June 12, Plaintiff improperly had already signed in for the entire week. Def.'s Ex. D.

For the 2009-2010 academic year, Plaintiff was assigned to the Excel Academy. Plaintiff's position at Excel, like his position at Patterson, was not tenured and he did not have seniority at Excel. At Excel, Plaintiff did formally request an

---

[2] Apparently, at Patterson, Plaintiff was not assigned a particular class or classroom but would be asked to assist particular students or classes as needed.

3

accommodation so that he could attend Friday prayers during his lunch time. Def.'s Ex. F. That request was forwarded to Defendant's internal EEO Manager, Allyson Huey, and on October 8, 2009, Huey informed Plaintiff by letter that his request was granted. Def.'s Ex. H. She explained, however, that this accommodation was based upon Plaintiff's current assignment and schedule and that, should his assignment and/or schedule change, the accommodation might need to be further reviewed to determine if continuing the accommodation would create an undue burden upon the educational process. Id. Plaintiff was instructed that, should his assignment change, he should contact Huey so that the accommodation could be re-evaluated. Plaintiff acknowledges that he was allowed to attend Friday prayers while assigned to Excel.

Because of a surplus of math teachers at Excel, Plaintiff was transferred to the Francis Scott Key Elementary/Middle School in March of 2010. Although Plaintiff failed to contact Huey to have his accommodation re-evaluated, he continued to leave the school to attend Friday prayers while at Francis Scott Key. Plaintiff testified, however, that there was one occasion when he was not permitted to leave for Friday prayers. On this particular Friday, he was scheduled for an observation during the same time that he would have been out of the building and was not permitted to go to Friday prayers. Pl.'s Dep. at 68.

On April 26, 2010, Defendant's Chief Human Capital Officer sent Plaintiff a letter informing him that his contract would not be renewed for the 2010-2011 school year. Def.'s Ex. E. Shortly thereafter, on April 30, 2010, Plaintiff was evaluated by the Principal of Francis Scott Key and received an unsatisfactory evaluation. Def.'s Ex. K.

On November 8, 2010, Plaintiff filed a Charge of Discrimination with the Baltimore Community Relations Commission in which he stated he had been "subjected to continuing incidents of verbal harassment based on [his] national origin and religion, in which he was called a terrorist, a bomber, etc." Def.'s Ex J. The "bomber" allegation relates to an incident in March 2009 while Plaintiff was assigned to Patterson High School. Plaintiff testified that, as he was walking into the library, he overheard another teacher say "bomber, bomber, bomber, bomber." Pl.'s Tr. at 36. In his deposition, Plaintiff acknowledged that he was never called a "terrorist," but he inferred that meaning from the teacher's use of the word "bomber." Id. at 72. Plaintiff testified that, on another occasion, after the school had received a bomb threat, a student asked him what the school's telephone number was. Id. at 38. In a related accusation, Plaintiff testified that, on one occasion where "there was a bomb threat or there was like terrorist activity nationwide," a police officer with the school

5

system parked his vehicle behind Plaintiff's car, blocking him in.  Id. at 40.

In his Charge, Plaintiff also complains that he was "unexpectedly transferred in March 2010," and not given a proper classroom in which to tutor students.  Def.'s Ex. J.  In addition, he mentions that he was not permitted to attend Friday prayers on March 26, 2010, because of the formal observation and suggests that, because of that observation, his contract was not renewed.  Id.  He alleges that "[y]ounger, non-Muslim teachers were not subjected to the same treatment" as he was.  Id.

Proceeding pro se, Plaintiff filed this action on August 16, 2011, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. (Title VII), and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 et seq. (ADEA).  Discovery in this action proved somewhat problematic and the case was referred to Magistrate Judge Stephanie Gallagher for resolution of all discovery disputes.  In one ruling, Judge Gallagher referred to Plaintiff's discovery responses as "woefully deficient," and as "provid[ing] almost no substantive information."  ECF No. 43 at 1 and n.1.  In another, she awarded attorney's fees to Defendant based upon Plaintiff's unjustified nondisclosure of discovery and "myriad rules violations."  ECF No. 48 at 2.  In yet another ruling, she awarded further monetary sanctions based upon

Plaintiff's "repeated disregard for the rules and orders of this Court." ECF No. 59 at 2.

After a considerable extension of time, discovery has now closed and the parties have filed the pending cross motions for summary judgment.[3]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The only facts that are properly considered "material" are those that might affect the outcome of the case under the governing law. Id. The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); Pulliam Inv. Co. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987).

When considering a motion for summary judgment, the court views all facts and makes all reasonable inferences in the light

---

[3] While Plaintiff has captioned his pleading as a cross motion, it more closely resembles a simple opposition to Defendant's motion. For example, Plaintiff begins his argument by stating, "[a]n employee can take a discrimination case to a jury by showing . . . ." Pl.'s Mot. at 2.

7

most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party, however, must show that specific, material facts exist to create a genuine, triable issue. Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). A non-moving party "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) Also, a plaintiff cannot proceed to trial without "any significant probative evidence tending to support the complaint." First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89 (1968). On those issues for which the non-moving party will have the burden of proof, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in the rule. Fed. R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993). Evidence submitted both in support of and in opposition to a motion for summary judgment must be admissible and based on personal knowledge. Celotex, 477 U.S. at 323-24; Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. Celotex, 477 U.S. at 322-23. A court has an affirmative duty to

prevent factually unsupported claims and defenses from proceeding to trial.  Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).

**III. DISCUSSION**

While the Complaint would appear to also assert a hostile work environment claim and a failure to accommodate claim, Plaintiff's motion focuses almost exclusively on his termination, asserting disparate treatment claims premised on his belief that his contract was not renewed for the 2010-2011 school year because of his religion, national origin, and/or age.  See Pl.'s Mot. at 9-13.  Plaintiff only discusses the elements of those claims in his pleadings.  Nevertheless, the Court will briefly consider his hostile environment and failure to accommodate claims.

Those incidents that even arguably could give rise to a hostile environment claim, the "bomber" comment, the student's question about the school's phone number, and the police officer blocking his car on one occasion, all took place at Patterson High School.  Plaintiff left Patterson in June of 2009.  Plaintiff did not file a Charge of Discrimination until November 2010.  To exhaust his administrative remedies under Title VII or the ADEA, a plaintiff must file his Charge of Discrimination within 300 days of the alleged unlawful practice.  See 42 U.S.C. § 2000e-5(e)(1) and 29 U.S.C. § 626(d).  Plaintiff missed that

9

deadline by several months. Even were the Court to consider these incidents and Plaintiff's allegation regarding poor classroom space he was provided, these allegations would not rise to the level of a hostile work environment. See EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008) (noting that harassment must be "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment" and that the Fourth Circuit has recognized that this is a "high bar").

To the extent that Plaintiff is asserting a failure to accommodate his religious practices, he would need to establish that:

> 1) He has a bona fide religious belief that conflicts with an employment requirement;
>
> 2) He informed the employer of his belief; and
>
> 3) He was disciplined for failure to comply with the conflicting employment requirement.

Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1019 (4th Cir. 1996). The record indicates that Defendant accommodated Plaintiff's desire to attend Friday prayers on all but one occasion. On that day, his presence was needed so that a performance evaluation could be completed. While the employer has a reasonable duty to accommodate an employee's religious beliefs, it is not an absolute duty to eliminate all conflict. EEOC v. Firestone Fibers & Textiles Co., 515 F.3d 307, 313-14

10

(4th Cir. 2008). Here, the record reflects that Defendant reasonably accommodated Plaintiff's request to attend Friday prayers.

Turning to Plaintiff's primary claims, to establish a discrimination claim under either Title VII or the ADEA based upon Defendant's decision not to renew his contract, Plaintiff would need to establish: 1) his membership in a protected class; 2) qualification for the position; 3) an adverse employment action; and 4) the existence of circumstances giving rise to an inference of discrimination based on a protected category. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000). To meet that fourth element, Plaintiff asserts in his motion that, after his employment was not renewed, Defendant "continued to seek applicants with similar qualifications" from outside the class. Pl.'s Mot. at 9, 11, 12. Plaintiff also repeatedly asserts that discrimination is established because he was "the most qualified math teacher" at each of the schools in which he taught and, yet, his contract was not renewed.

The fault with Plaintiff's arguments is that they are not supported by any admissible evidence. The only evidence in the record addressing the qualification of Plaintiff relative to other teachers is his own testimony in his deposition[4] and in his

---

[4] Plaintiff has moved to strike his own deposition testimony based upon the fact that he did not waive his right to read and

11

affidavit.  That testimony is nothing more than Plaintiff's subjective evaluation of his and his former co-worker's qualifications.

For example, in his affidavit, he states, "I was the most qualified Math teacher at the four schools I taught at."  Pl.'s Aff. § 26.[5]  He acknowledges that this comparison of his qualifications with those of other teachers is "based upon his own knowledge," id. ¶ 39, but complains that he was unable to present other evidence because Defendant refused to produce it in discovery.  As noted above, the discovery process in this action was prolonged and somewhat problematic and Magistrate Judge Gallagher was actively and ably involved that process.  It appears that Plaintiff may have initially requested some of the information that he now complains he was not given.  See ECF No. 31 at 3 (Judge Gallagher's June 20, 2012, Memorandum discussing Plaintiff's document request for "[p]ersonnel files for all Math Teachers in [the Baltimore City Public School System (Grades 7-12)").  When asked for support for this request, Plaintiff simply responded, "Plaintiff believes the files contain

---

sign his deposition.  Plaintiff subsequently made minor, non-material corrections to the transcript, but, as Defendant notes, he did not sign the errata sheets.  ECF No. 84-1.  Given the lack of materiality of Plaintiff's corrections, the motion to strike will be denied.

[5]Plaintiff also avers, without evidentiary support, that he "has more senioritis [sic] than some" of the other math teachers. Pl.'s Aff. ¶ 37.  The Court assumes Plaintiff meant, seniority.

12

information related to his allegations." Id. at 4.  Finding that reason insufficient, Judge Gallagher denied Plaintiff's motion to compel an answer to that request.  Id.  Plaintiff did not challenge that ruling and cannot do so now.[6]

Plaintiff made similar subjective observations in his deposition.  When asked about the teachers at the Excel Academy, Plaintiff testified, "I feel I am the most qualified math teacher in the whole Baltimore City Public Schools.  I feel that most of the teachers there, they don't have teaching certificates, if you will, they don't have the background and the knowledge as I do."  Pl.'s Dep. at 34.  When asked about the lack of certification, he responded, "[m]y feeling is that they did not have teaching certificates.  That is my impression.  I may be right, I may be wrong."  Id. at 36.  When asked about the teachers at Francis Scott Key, Plaintiff first opined that "[a]ll of them" did not have teaching certificates, but when asked why he believed that, he modified his response to "the majority of them" did not have certificates.  Id. at 58.  When asked to identify a particular teacher who he believed was not certified, he proffered, "I'm guessing, the people who come from the Philippines."  Id.  Plaintiff also acknowledged that he had

---

[6] The Court notes that Plaintiff was represented by counsel during at least part of the discovery process.

13

no knowledge of which teachers were or were not tenured. Id. at 69.

It is clear from Plaintiff's testimony that he has no actual knowledge of the qualifications, certifications, or seniority of the other teachers at the schools in which he taught. His subjective opinion of those teachers is based on nothing more than guesses, feelings, impressions, and perhaps, his own stereotypes. Plaintiff cannot defeat Defendant's summary judgment motion by sole resort to his subjective evaluation of his own superiority to those outside his class.

Plaintiff does proffer one additional form of evidence, i.e. copies of less than a dozen civil complaints filed by other employees of Defendant alleging various forms of discrimination. Pl.'s Ex. 15. These complaints allege discrimination on the basis of gender, race, disability, and religion.[7] Plaintiff suggests that Defendant "is not a **Clean employer**, due to the quantum of discrimination cases filed in this court against this defendant." Pl.'s Mot. at 12 (emphasis in original). These complaints are simply allegations of discrimination, not proof of discrimination and offer no support for Plaintiff's claims.

---

[7] In the religious discrimination complaint, the plaintiff alleged discrimination based upon her Christian faith.

14

Finding that Plaintiff has offered no evidence in support of his claims, the Court will grant summary judgment in favor of Defendant. A separate order will issue.

```
               _____/s/_____
               William M. Nickerson
               Senior United States District Judge
```

DATED: September 30, 2013